v. Credit Adjustments, Incorporated, Arboretum, and Preside, Mr. Craig Tagg, Board of Trustees. Good morning. You may proceed. We would request that the Court permit us to reserve four minutes for rebuttal. Very well. The underlying premise of the FCC creditor-deditor rule is set forth in the rule itself. The rule says, persons who knowingly release their phone numbers have, in effect, given their invitation or permission to be called at the number they have given. The operative key word being knowingly. Knowingly release. The issue, insofar as it relates to the two forms before the Court, is whether, by signing the Mount Carmel preprinted authorization forms, our clients, Baisden and Seselco, can be said to have knowingly released their cell phone numbers to consultant anesthesiologists on whose behalf Credit Adjustments was collecting. Of course, the answer depends upon what's written in those forms. If I can ask a question, because, and you may not be able to, as a matter of your ethical responsibilities to your client, to answer the question, if so, that's fine. And that is, why wasn't this case brought under the Fair Debt Collection Practices Act? You've got a bill collector, that statute, according to my understanding, was intended to respond to congressional response to the kinds of abuses I understand occurred here, multiple robocalls in an effort to collect the debt. And I'm truly baffled because it seems to me that's the statute that fits the scenario that you're trying to remedy. The two statutes, the TCPA, Telephone Consumer Protection Act, and the Debt Collection Practices Act, actually protect different interests. Although debt collectors are subject clearly to the TCPA and the FCC has so ruled and courts have repeatedly so ruled, they're different interests being protected. What's being protected with the TCPA is, as to debt collectors and as to everyone else, is you cannot abuse telephone technology. That's what this case is about. It's abuse of telephone technology. And it's my understanding, and it may be incorrect, I want to make that very clear, that as a general rule, I don't know whether it's technically preemption or not, but as a general rule and policy, when Congress seeks to respond to one set of problems in a particular statute, where another statute might apply, you let the problem be addressed only in the statute intended to remedy the problem. And if I'm wrong about that, fine, but at least as a matter of policy, it makes a lot better sense to me, instead of trying to stretch the TCPA to fit your case, to say, no, you should have gone under the Fair Debt Collection Practices Act, and particularly in light, and I know it's a multi-part speech rather than question, but particularly in light of, as I understand, the dominant role that the FCC plays in doing what it did in regulating the application of the statute. All I can say, Your Honor, is two things. What I said before is that there are different interests being protected. The TCPA deals with abuse of telephone technology by anyone, including debt collectors. And this is referenced in our brief, that debt collectors are subject to the statute. Not only does the FCC repeatedly say that, but the case law says it. There are many cases, not in our brief, but in general, Your Honor, many cases against debt collectors throughout the country in the federal courts when they've been found liable under the TCPA. But they don't involve the contention that's being made here about the questionable, the question as to whether the consent to use was knowing. Those other cases obviously would have cited them if they do. What is different about this case is that at the time it was first presented to the lower court, there were no cases involving that we could find, no one else found, involving an indirect transfer of telephone numbers by way of a consent form signed for one creditor supposedly transferring to another creditor. There were no cases like that. The FCC's debtor-creditor rule had never been applied in that fashion. It was always the direct providing of the numbers. During the pendency of this case, actually 18 days after we had already filed our opposition brief, the Mice case was decided by the 11th Circuit, recognizing for the first time that we could ever determine this theory. And we set forth in our brief. A tag along. You give it to one and all of a sudden. We'd like to think they were tagging along to us, but I suppose they would say we're tagging along to them. We had no knowledge of that case. I didn't mean that, but the idea that if I say, okay, you can use it for your purposes, what I mean is you can let somebody else tag along by passing my number to someone else. That's what I meant. And that's the main problem we have with this scenario. It's the credit adjustment people are the ones who are using the phone number rather than the hospital. The adjusting people stand in the shoes of consultant anesthesiologists. We've never contested that. We're saying that these forms did not transfer, did not permit Mount Carmel Hospital to disclose cell phones to consultant. That's what we're saying. We're saying to avoid reversal, they have to win in all three points. They have to convince this court that the word use, and this is in both forms. There are two forms here, but both forms say, I understand Mount Carmel may use my health information. And then it gives the various purposes. Use health information. In their brief to this court, and in the briefs below, the defendant, the appellee here, has never explained how use can mean disclose. And they've never explained how health information can mean cell phone numbers. They just haven't done it. Now in the Mice case, upon which the district court relied, both of those terms in that case were defined for the consumer to read. Right in the authorization that was signed, it said that that hospital, it was a hospital in that case too, that hospital could use or disclose, or disclose is right in the form. So the consumer reading that could say, if I sign this, I'm knowingly allowing them to disclose. That's not here. The word disclose is not there. All we have is the word use, and we contend that the word use does not mean disclose. Now the district court specifically said that it was found that our clients had granted permission to disclose. We contend that's wrong. The word is use. It's a different word. And if there's any doubt about this, these are preprinted forms, and they should have been construed against the hospital. These are adhesive forms. We believe there is no doubt. Interestingly enough, in terms of health information, the other term that we contend, the defendant has never explained how that can be cell phone numbers. Again, I may be mistaken, but I thought that the hospital form used the word billing in there at some point, and it's sort of a laundry list of purposes in signing the form. It said the hospital, Mount Carmel, may use for billing. It doesn't say Mount Carmel can disclose to others for their billing. I understand that. But consultant anesthesiologists did perform the service here at the hospital. Is that right? That's true. And did your clients have a separate contract with consultants, or is the contract through the hospital? The case law, my understanding of the case law. No, I'm just asking you the question. Do your clients have a separate contract? We believe there is evidence in the record that there were separate transactions. There were no written contracts that we're aware of, but there is substantial evidence. Consultants, they perform the services at the hospital as part of your client's overall care at the hospital. I mean, this is part and parcel of the admission, I think. There's no evidence of that in the record. Well, is it not or not? It's not. You didn't go shopping for anesthesiologists, did you? We have cited three cases in our brief showing that it's creditor-specific, including in the medical context. It's debt-specific. It's creditor-specific. In this case, there was a bill that was sent by the anesthesiologist to our clients, collected by the collectors against our clients. It wasn't attached to the hospital bill. There were separate consent forms signed by our clients for the anesthesiologist. There clearly was a separate transaction. The defendant is conflating the two transactions. The hospital bill and the hospital services with the anesthesiologist services, they can't be conflated. We've cited cases saying that exact point, and we, as a matter of fact, factual matter, there's evidence in the record that they were separate transactions. They're separate consent forms, separate bills, et cetera. It's in our brief. All right. I think we understand your argument. Any further questions? Judge Batchelder, do you have any questions? I do not. Nope. All set. Thank you. All right. You'll have your four minutes rebuttal. Thank you. May it please the Court. Brian Speece on behalf of CAI. I want to start off with the question that Judge Griffin had regarding whether or not this would have been part and parcel of the admission process. The forms at issue and in the record, the based-in form is page ID 141. The Sysico forms are page ID 163 and page ID 172. All of those forms start off by saying, while at Mount Carmel, I give consent for, quote, all medical and surgical care. So to your point, that we're not shopping around for anesthesiologists, that's very broad, that you're not going to go through the admission process ten times, once for the hospital, once for the anesthesiologist, once for some other type of doctor. There's one admission that covers this. Let me ask you. It seems to me, certainly in reading the briefs the first time through, the appellants for your first time through, I agree completely, at least as a matter of plain English. I sign a hospital admission form where I give them my cell phone number for all the things that are listed. And I think billing is in there somewhere. Hospital. Candidly, I don't see how that's express consent to a bill collector to use my number. But as I understand the situation, I mean, for me to implement that, I have to sort of override or jump past what the FCC has done interpreting this statute. I assume, I mean, tell me how that works. What's the interplay there between the statutory terms, which I think are quite clear, in this case the conduct violated, reading only that. But then we have the overlay of the FCC activity. Well, I think first you go back to the form itself and the fact that it talks about billing and payment. You're signing this. I understand, but I'm just saying express consent all the way down to the bill collector. Hospital, fine. The hospital calls me and pesters me about it. Terrific. But I don't think if you were to ask an ordinary person, can they turn this over to bill collector, can the hospital, and I think an ordinary person would say, no, you can't. Of course not. Sure, they can call me, but not some bill collector hassling me. It's my understanding, and maybe it's something I should have asked your opponent, but it's this FCC oversight in determining the scope and how the statute's implemented. How does that work? Go ahead. You may not have asked my opponent, but he addressed it. He said that the debt collector stands in the shoes as to consultant anesthesiologists and said they've never objected. So what deference does this court have to give to the FCC administration of the statute? Those are the controlling, those FCC points that come in every so many years clarifying things, those are considered controlling authority on how we interpret that. I don't know, but totally controlling, absolutely omnipotent, or is there some way around that a court can say, no, you're just so far off base, we don't have to pay attention to it. I just don't know. I'm asking you because I don't know the law in there. Those are controlling, and to your point about how an ordinary layperson would interpret this as whether a debt collector, the form is not going to include the name of every individual debt collector. I understand that, but really I'm trying to find out what the law is in terms of the deference that court of appeals or any court has to give to the FCC's declaration of what the law is. I can tell you what this court did in August of 2015, just four months ago, in the case of Hill v. Homeward Residential. The Sixth Circuit said, quote, a debtor consents to calls about an existing debt when he gives his number in connection with that debt, end quote. So if you give your number in connection so that this court has said that that FCC, and that's essentially we're paraphrasing the FCC ruling from several years prior. Was that a third-party bill collector? Who was alleged to have violated? In that case, the plaintiff who was filing the lawsuit had raised an issue over whether or not he still owed money on his mortgage, and he had provided his number to the mortgage company. Getting back to the deference that we owe the FCC regulations, is it the Hobbs Act that controls here, that the Hobbs Act provides that the FCC regulations may only be reviewed on direct appeal from the FCC, and that they are otherwise binding on us? Is that it? Correct. Hobbs Act was the name that was escaping me. Thank you. Okay. That's a little different than other regulations that we have by administrative agencies that might be entitled to Chevron deference or this or that. The Hobbs Act is peculiar in regard to the FCC. Right. And what the FCC says in the issue that's critical here is they say, persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number they have given. My opponent in the briefs implies that somehow they haven't invited consultants and anesthesiologists to call them, but when they show up and they're admitted and they give that information as to the reading of the FCC, they're knowingly releasing their phone numbers and given an invitation or permission to be called. That's what sets a debt collector apart from a telemarketer. CAI is not a . . . I have the same trouble with Judge Carr. I don't see that as an express consent. I see maybe an applied consent, but the FCC has ruled otherwise. That's the problem the plaintiff has with the case. But if you looked at the plain language of the statute, do these facts fit into expressed? Prior express consent is the word of the statute, and I would say maybe you've got implied consent to use the phone numbers, but is this express consent, but the FCC has ruled otherwise. And I think part of the reason they've done so is they want to set a debt collector aside. The whole premise of this TCPA is for these robocalls, these unwanted solicitations that come out of nowhere offering someone a beach vacation. This is not what happened here. They had a medical debt, and they called them on the number. My understanding is, because I've had some of these cases, both under the Fair Debt Collection Practice Act and the TCPA, my understanding is the TCPA is directed to the solicitation to sell you something. Correct. The Florida vacation or the bridge in Arizona or whatever. So to your point, I don't know that you would ever get the kind of express consent you're wanting where it's going to walk through and name CAI as the specific debt collector if it can't. It would sort of undo the entire debt collection process to require something that would meet that express that I think you're talking about. It may be you may not find that that's your definition of express, but if we don't consider that express, how does a debt collector ever collect from a hospital? So there really is no rules on this type of collection that you can have robocalls going every 10 minutes to the debtor and go on forever. I mean, there's no limit to it? And that's where the FDCPA that Judge Carl alluded to. And for purposes of this argument, we're not addressing, we don't agree with the allegations of the number of calls, but this court doesn't even need to address that. Yeah, and that's my whole point. And if I can pick up on that, having already shown this, I obviously read the briefs and noticed reference to the Hobbs Act and didn't make that connection. What about, I mean, is there anything to my very hazy thought about, as a matter of policy, not trying to stretch this statute, particularly in the face of the FCC action, to fit conduct? It's clearly covered under the Fair Debt Collection Practices Act. I mean, if the answer is I don't know, Your Honor, that's fine. I don't think it's really that pertinent at this point, but I'm just curious. If the issue is the number of calls or abuse of calls, the FDCPA certainly would address that. There are cases, as he alluded to, where the TCPA does address the situation. There's one that's cited, I believe, in the Hill case. It's from the Second District Court of Appeals. Nigro, I believe, N-I-G-R-O, is the plaintiff. And in that case, the person went to turn off their mother-in-law's power. It wasn't their bill. It was their mother-in-law's house. She had died. She was deceased. Son-in-law comes in and tries to turn that off and gives his phone number there. The court ruled that that was not in connection with. But that's not what we're talking about here. Here, you refer to it as a tag-along. I don't know that I would use the term tag-along, but in this case, you've got an anesthesiologist working with a hospital. There's one admission process. That's completely different from the Nigro case. My opponent also references whether or not health information doesn't include phone numbers or the hospital's ability to use versus disclose. Again, if you look at the forms themselves, and it talks about billing and payment for all medical and surgical care, I'm not sure how they, whether you were using the word use or disclose, I'm not sure how you argue that they can't use that information when they've provided it for purposes of billing. Well, elsewhere in the law, Congress has made a definitional distinction between use and disclose, and that's in Title III, the wiretap statute. There are separate crimes, one of using the stuff, but even if you don't use it but you disclose it, that's a separate. Congress knows how to do that, whether the FCC did it or not, or the statute does it. Candidly, I don't think any of that matters a whole lot. And Bayes and Sissico also sort of framed this this morning as a question of whether they knowingly. This is in the consent form that they signed at the hospital, so I think that that's without basis the argument that they did not knowingly consent to this information. If there aren't any further questions, we believe that this is not the kind of case that the TCPA would address because there is here, we have a specific exemption if there's prior express consent, and by coming into the hospital, giving their phone number, signing a consent form as to billing and payment, we believe that that prior consent is there, and that's what the district court found, and we're asking this court to affirm the district court decision. Any further questions, Judge Batchelder? No, thank you. All right, thank you, counsel. Four minutes rebuttal. Thank you, Your Honor. Judge Griffin pointed out the terms of the Hobbs Act, and what seems to, that it has erected what strikes me as an impermeable barrier to relief in this case. They delegated, as I understand it, to the FCC absolute determination of what the statute means and how it's to be applied, and it certainly looks okay to me under the FCC regulations, so I suppose how do we get around the Hobbs Act if we can? It's not necessary to get around the Hobbs Act for the appellants to prevail because under the debtor-creditor rule, which is the FCC's derogation, alleged derogation of the express consent, it's implied consent, that requires that the number be given to the creditor. The creditor here is consultant, and in our brief, we've cited the 2008 declaratory ruling where it says, it emphasizes that prior express consent is deemed granted only if the wireless number was provided by the consumer to the creditor and that such number was provided during the transaction that resulted in the debt owed. We contend that all those these refer to consultant, the anesthesiology bill, not to the hospital. And in our brief, we did cite three cases, including the Hines case involving a hospital in a similar arrangement and also the Moyes case where it's improper to conflate, unless they could factually prove that the transactions were co-extensive, which they have not done here. The evidence is to the contrary. If the transactions as a factual matter are not co-extensive, they can't conflate them. What does co-extensive mean? Factually co-extensive, namely that... Plurally co-extensive? Sorry? Your client went in the hospital one day, and if I understand correctly, got surgery the next day with the... and obviously anesthesia was part of the contemplated surgery all along, so why isn't that, quote, co-extensive? It's not the admission into the hospital that you're there for, it's to get the surgery for which you need the anesthesia. Why isn't, even though it's 24 hours or whatever apart, why isn't that co-extensive in sort of real-world terms with the whole why he was there in the first place? Because as a factual matter, they're separate creditors and they're separate debts, and we rely upon the Hines case and the Moyes case cited in our brief. So that is very, very similar, along with Lee v. Gulf Coast. Those three cases speak to this directly. The other thing that I'd like, unless I have not answered... Did they involve hospitals? The Hines case did. And the Moyes case involved a doctor and a lab, where the lab didn't have consent, even though the doctor did. And in the Hines case, the hospital had consent, but the provider did not. That was the scenario there. It's very similar to what we're talking about here. The other comment I'd like to make to the Court relates to the question that was discussed originally by you, Your Honor, and also again in Mr. Spee's comments about debt collection somehow. The implication I understood is debt collection somehow not being subject to the Act. On page 31 of our brief, we cite the 2003 report and order of the FCC where it clearly says, we affirm that under the TCPA it is unlawful to make any call using an automatic telephone dialing system, and any in the original is emphasized. And there are cases cited on that page, including the Third Circuit's decision in Gager applying the TCPA to debt collection. Thank you, Your Honor. Thank you. Thank you both. And the case has been submitted. We may call the next case.